# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHERYL PANEBIANCO, TINA BECKER. LATANYA FOFANA-SMITH, AND VICTORIA GAILER, | ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| | ) | Case No. |
| v. | ) ) | |
| FIRST STUDENT, LLC, | ) ) | **JURY TRIAL DEMANDED** |
| | ) ) | |
| Defendants. | ) ) | |

NOW COME Plaintiffs, Cheryl Panebianco, Tina Becker, Victoria Gailer, and LaTanya Fonfana-Smith and for their Complaint against defendant First Student LLC, state as follows:

1.      Plaintiffs bring this action on behalf of themselves and a class of others similarly situated employees seeking to require defendants to pay back wages owed to them and the proposed plaintiff classes, wages which defendants failed to pay pursuant to state and Federal law.

**Parties**

1.      Plaintiff Cheryl Panebianco is a resident of New Jersey and a true and accurate copy of a "Consent to Join" form is attached hereto as Exhibit P1.

2.      Plaintiff Tina Becker is a resident of New Jersey and a true and accurate copy of a "Consent to Join" form is attached hereto as Exhibit P2.

1

3.      Plaintiff Victoria Gailer is a resident of New Jersey and a true and accurate copy of a "Consent to Join" form is attached hereto as Exhibit P3.

4.      Plaintiff LaTanya Fofana-Smith is a resident of New Jersey and a true and accurate copy of a "Consent to Join" form is attached hereto as Exhibit P4

5.      All of the foregoing parties shall be denominated as "Plaintiff" and shall be referred herein collectively as "the Plaintiffs."

6.      First Student LLC is a foreign corporation with its principle offices located at 705 Central Avenue, Cincinnati, Ohio.

7.      First Student LLC is referred herein as "First Student."

## Introduction

8.      During and before 2014, plaintiffs were employed by First Student as bus drivers and driver assistants, in the intrastate transportation of students to local municipal schools and providing students intrastate transportation to extracurricular activities such as various extracurricular activities.

9.      The aforementioned employment was pursuant to an express agreement between the parties wherein the defendant agreed to pay for all time plaintiffs expended in defendant's service.

## The Bus Yards

10.      Upon information and belief, between 2013 and the date of this complaint, First Student operated and/or continues to operate out of approximately twenty-four (24) separate bus yards in the state of New Jersey.

11.      First Student operates a bus yard located at 270 Gloucester Pike, Lawnside, New

Jersey ("the Lawnside Yard").

12.     First Student operates a bus yard located at 835 Watson - New Freedom Road, Berlin, New Jersey ("the Berlin Yard").

13.     First Student operates a bus yard located at 730 Whitehorse Pike, Cologne, New Jersey ("the Colonge Yard").

14.     First Student operates a bus yard located at 22 Hartford Rd, Delran, New Jersey ("the Delran Yard").

15.     First Student operates a bus yard located at 40 Industrial Drive, Willingboro Township, New Jersey ("the Burlington Yard").

16.     First Student operates a bus yard located at 145 Amboy Road, Morganville, New Jersey ("the Tinton Falls Yard").

17.     First Student operates a bus yard located at 29 River Road, Chatham, New Jersey ("the Chatham Yard").

18.     First Student operates a bus yard located at 221 Henderson Rd, Monmouth Junction, New Jersey ("the Piscataway Yard").

19.     First Student operates a bus yard located at 1628 Millstone River Road, Hillsborough, New Jersey ("the Hillsborough Yard").

20.     First Student operates a bus yard located at 125 Foothill Road, Bound Brook, New Jersey ("the Bound Brook Yard").

21.     First Student operates a bus yard located at 2595 E State Street Ext, Trenton, New Jersey ("the Trenton Yard").

22.     First Student operates a bus yard located at 177 State Route 94, Lafayette, New

Jersey ("the Lafayette Yard").

23.    First Student operates a bus yard located at 3rd Avenue & Route 35, Neptune,
New Jersey ("the Neptune Yard").

24.    First Student operates a bus yard located at 170 S Dean St, Englewood, New
Jersey ("the Englewood Yard").

25.    First Student operates a bus yard located at 727 Us Highway 206, Andover, New
Jersey ("the Andover Yard").

26.    First Student operates a bus yard located at 2 Gowin Street, Sayreville, New
Jersey ("the Sayreville Yard").

27.    First Student operates a bus yard located at 35 Troy Lane, Lincoln Park, New
Jersey ("the Lincoln Park Yard").

28.    First Student operates a bus yard located at 165 Amboy Road, Marlboro, New
Jersey ("the Freehold Yard").

29.    First Student operates a bus yard located at 140 Hamburg Turnpike, Butler, New
Jersey ("the Butler Yard").

30.    First Student operates a bus yard located at 7 Trenton Lakewood Road,
Clarksburg, New Jersey ("the Clarksburg Yard").

31.    First Student operates a bus yard located at 136 Freeway Dr East, East Orange,
New Jersey ("the East Orange Yard").

32.    First Student operates a bus yard located at 5 Sicomac Road, North Haledon, New
Jersey ("the North Haledon Yard").

33.    First Student operates a bus yard located at 90 Kingsland Avenue, Clifton, New

Jersey ("the Clifton Yard").

34.     First Student operates a bus yard located at 53 Central Avenue, Rochelle Park, New Jersey ("the Rochelle Park Yard").

35.     First Student operates a bus yard located at 473 Route 31 South, Warren, New Jersey ("the Warren Yard").

36.     In and before 2014, and persisting until the time of this complaint, First Student violated Federal and New Jersey state law by failing to abide by the respective wage and hour laws and pay employees' wages as required.

37.     First Student's acts and omissions constituting violations include, but are not limited to, refusing to pay drivers and assistants for time actually spent working for First Student, failing to pay employees "time and a half" for all overtime, and failing to keep accurate time records.

38.     Plaintiffs bring the Federal Law claim, Count I, in this action pursuant to the Fair Labor Standards Act and the Portal to Portal Act, seeking unpaid wages, liquidated damages, interest, costs and attorney's fees.

39.     Plaintiffs bring the New Jersey, Counts II and III, in this action pursuant to New Jersey law on their own behalf and on behalf of employees similarly situated, seeking unpaid wages, unpaid overtime, attorney's fees and cost and other available remedies including liquidated damages and interest on any and all wages found to be owed.

### Jurisdiction and Venue

40.     Jurisdiction over plaintiffs' federal claim alleged in Count I is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standard Act ("FLSA") and 28 U.S.C. § 1331 (Federal

Question).

41.     Jurisdiction over plaintiffs' state law claims alleged in Counts II and III is conferred upon this Court by 28 U.S.C. §1367(a) (Supplemental Jurisdiction).

42.     Venue is proper in this District, because Defendant operates from multiple locations within this District and numerous named Plaintiffs are residents of this District.

## Interstate Commerce

43.     Based upon preliminary good faith investigation, First Student is a nationwide provider of student bus transportation with operations in 42 different states.

44.     Based upon preliminary good faith investigation, First Student operates an enterprise engaged in interstate commerce within the meaning of the FLSA.

45.     Based upon preliminary good faith investigation, for each of the three (3) years preceding the filing of this complaint, First Student has employed 2 or more individuals "handling, selling, or otherwise working on goods or materials that be been moved or produced for commerce."

46.     Based upon preliminary good faith investigation, First Student grossed more than $500,000.00 in the past fiscal year.

47.     Plaintiffs, and members of the Plaintiff Class, at all time relevant hereto, were "employee(s)" as the term is defined by 29 U.S.C. §203(e).

48.     First Student was, at all times relevant hereto, an "employer" as that term is defined by 29 U.S.C. §203(d).

## Allegations as to Willful Violations

49.     Based upon preliminary good faith investigation, First Student's violations in this case were "willful" violations and not the result of any mistaken impression of the applicable law as they were warned of the impropriety of their conducted on multiple occasions.

50.     Pursuant to two (2) Freedom of Information Act (FOIA) requests, Plaintiffs secured multiple investigations by the United States Department of Labor (USDOL) First Student and its subsidiaries for a period of ten (10) years. Contained with the production were six (6) instances of First Student violating the FLSA, ultimately resulting in the imposition of civil penalties as a result of First Student's "history of violations." The relevant investigations are summarized as follows:

a.  Case 1321753. Investigation report dated 2/24/04, location Hudson, New Hampshire. First Student's contention that school bus drivers are exempt from overtime under the FLSA was rejected. Total overtime back-wages due: $5,245.00.

b.  Case 1332520. Investigation report dated 9/11/04, location Hanson, Massachusetts. First Student's contention that school bus drivers are exempt from overtime under the FLSA was rejected. Total overtime back-wages due: $3,081.61.

c.  Case 1455596. Investigation report dated 12/27/11, location Sheffield Ohio. First Student violated FLSA and directed to pay 52 bus drivers for overtime. Total overtime back-wages due: $16,707.73.

d.  Case 1525848. Investigation report dated 11/21/08, location Elyria, Ohio. First Student's violated FLSA and directed to pay bus driver for overtime. Total overtime back-wages due: $185.31.

e. <u>Case 1537033</u>. Investigation report dated 7/30/09, location Englewood, New Jersey. First Student was order to pay back-wages and overtime to school bus dispatchers pursuant to a "self-audit". Total overtime back-wages due: $420,428.61.

f. <u>Case 1560444</u>. Investigation report dated 10/5/10, location St. Louis, Missouri. First Student found to have violated FLSA for two employees. Civil penalties assessed due to First Student's "history of violations." Total overtime back-wages due: $2,230.88.

g. <u>Case 1455596</u>. Investigation report dated 12/27/11, location Hudson, New Hampshire. First Student's contention that school bus drivers are exempt from overtime under the FLSA was rejected. Total overtime back-wages due: $5,245.00.

51.     Pursuant to an Illinois Department of Labor Freedom of Information Act, 5 ILCS 140/1 *et seq.*, Plaintiffs secured multiple investigations by the Illinois Department of Labor concerning First Student and its subsidiaries for a period of ten (10) years.

52.     Contained with the production were six (6) instances of First Student violating Illinois wage and hour laws.  The relevant investigations are summarized as follows:

a)   IDOL File No.: 10-002763. Wage Payment Demand dated 5/10/11, location Naperville, Illinois, the Honorable Michael Haggerty, ALJ, ordered First Student pay $162.50 unpaid wages.

b)   IDOL File No.: 10-004519. Wage Payment Demand dated 1/24/11, First Student was ordered to pay $135.50 in unpaid wages.

8

    c)  IDOL File No.: 10-000755. Wage Payment Demand dated 11/16/11, location Springfield, Illinois, the Honorable Michael Haggerty, ALJ, ordered First Student pay $1,427.31 in unpaid wages.

    d)  IDOL Wage Claim No.: 11-003316.  Wage Payment demand dated 12/03/12, location Naperville, Illinois, the Honorable Sharon Ballin, ALJ, ordered First Student to pay $13,296.80 in unpaid wages and $4,450.00 in liquidated damages.

    e)  IDOL File No.: 12-001693.  Pursuant to a Wage Claim dated 3/18/12, location South Holland, Illinois, First Student pay $43.10 in unpaid wages.

53.    Pursuant to a New Jersey Open Records Act request, Plaintiffs secured multiple investigations by the New Jersey Department of Labor and Workforce Development (NJDOL) concerning First Student and its subsidiaries for a period of ten (10) years.

54.    Contained with the production were six (6) instances of First Student violating the New Jersey's Wage and Hour law, ultimately resulting in the imposition of significant civil penalties as a result of First Student's "history of violations" of other state wage and hour laws. The relevant investigations are summarized as follows:

    a)  Case GE-1268-0611-WAL. Investigation report dated 4/25/11, location Lawnside, New Jersey. First Student was ordered to pay $439.27 in wages, $43.93 in fees and a penalty of $500.00.

    b)  Case GE-1947-0711-MAT. Investigation report dated 9/17/11, location Englewood, New Jersey. First Student was ordered to pay a penalty of $500.00

for the failure to promptly pay wages.

c) Case GE-2861-0804-HOL. Investigation report dated 6/21/04, location Englewood, New Jersey. First Student was ordered to pay $10,630.78 in wages, $1,063.08 in fees and a penalty of $2,000.00.

d) Case GE-4002-1206-HAO. Investigation report dated 12/6/06, location Delran, New Jersey. First Student was ordered to pay $1,637.40 in wages, $163.74 in fees and a penalty of $250.00.

e) Case GE-1789-0308-KEL. Investigation report dated 3/7/08, location Gardner, New Jersey. First Student was ordered to pay a penalty of $250.00 for the failure to keep payroll records.

f) Case GE-1825-0610-MUL. Investigation report dated 7/12/10, location Great Meadows, New Jersey. First Student was ordered to pay $405.27 in wages, $40.53 in fees and a penalty of 50.00.

55. Pursuant to a New Hampshire Open Meetings Law request, Plaintiffs secured multiple investigations by the New Hampshire Department of Labor (NHDOL) concerning First Student and its subsidiaries for a period of thirteen (13) years.

56. Contained with the production were ten (10) instances of First Student violating the New Hampshire's Wage and Hour law, ultimately resulting in the imposition of significant civil penalties as a result of First Student's "history of violations" of other state wage and hour laws. The relevant investigations are summarized as follows:

a) Case No. 16709. Investigation report dated 10/15/03, location Belmont, New Hampshire. First Student was ordered to pay a penalty of $100.00 for the failure

10

to pay wages to employees who were engaged in in-service training, meetings, pre-trip inspections and post-trip inspections.

b) <u>Case No. 26802</u>.  Investigative Report dated 8/24/06, location Milford, New Hampshire.  First Student was ordered to pay a penalty of $500.00 for having drivers pay tolls with their own funds.

c) <u>Case No. 35079</u>.  Investigative Report dated 3/19/09, location Milford, New Hampshire.  First Student was ordered to pay a penalty of $4,800.00 for the failure to keep proper records.

d) <u>Case No. 45502</u>.  Investigative Report dated 5/9/13, multiple locations in New Hampshire.  First Student was ordered to pay a penalty of $8,000.00 for the failure to pay wages as required and failure to maintain proper records.  First Student was also ordered to pay back wages to employees.

e) <u>Case No. 15603</u>. Wage Payment Demand dated 05/31/02, location Candia, New Hampshire, James P. McDonough, Hearing Officer, ordered First Student pay $23.63 in unpaid wages.

f) <u>Case No. 26376</u>. Wage Payment Demand dated 12/02/05, location North Sutton, New Hampshire, Thomas F. Hardiman, Hearing Officer, ordered First Student pay $697.49 in unpaid wages.

g) <u>Case No. 30943</u>. Wage Payment Demand dated 08/17/07, location Sutton, New Hampshire.  James P. McDonough, Hearing Officer, ordered First Student to pay $1,569.15 in unpaid overtime wages.

    h) <u>Case No. 33057</u>. Wage Payment Demand dated 04/21/08, location Milford, New Hampshire.  James P. McDonough, Hearing Officer, ordered First Student to pay $379.75 in unpaid wages.

    i) <u>Case No. 40107</u>. Wage Payment Demand dated 08/25/10, location Nashua, New Hampshire, James P. McDonough, Hearing Officer, ordered First Student pay $801.20 in unpaid wages.

    j) <u>Case No. 41087</u>. Wage Payment Demand dated 01/27/11, location Swanzey, New Hampshire, Thomas F. Hardiman, Hearing Officer, ordered First Student pay $1809.29 in unpaid wages.

57.    Federal law and the relevant federal regulations require that the Defendant maintain time records. <u>See</u>, 29 <u>U.S.C.A.</u> § 211(c).

58.    New Jersey law requires that all employers must keep a true and accurate record of the hours worked by each, wages paid to each, and classification of employment when necessary.

59.    First Student does not maintain time records, but rather estimates the anticipated time in which an employee is expected to work, and in virtually all cases pays the employee for the anticipated time regardless of how much time is actually worked.

60.    The aforementioned anticipated time is virtually always wrong.

61.    The New Jersey wage laws provide that a court in any action brought under this subsection may, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action, and reasonable attorney's fees, to be paid by the defendant.

62. First Student consistently fails to pay employees for all time worked and for overtime.

63. Based upon preliminary good faith investigation, First Student's compensation policies and practices relative to its bus drivers was a calculated choice, risking the chance of prosecution against the cumulative savings from non-payment of wages due and owing.

64. Because First Student's history bespeaks of willful violations, the three (3) year statute of limitations under the FSLA applies to Plaintiffs' FLSA claims in this matter.

**Class Representation under FLSA**

65. Pursuant to 29 U.S.C. §216(b), Plaintiffs bring the claim alleged in Count I on behalf of themselves and an opt-in class of all persons who were, are or will be hourly non-exempt bus drivers and driver assistants employed by First Student, who earned, but did not receive proper payment under federal law ("the Proposed FLSA Class").

66. Plaintiffs contend that class representation is appropriate because:

   a) Based upon preliminary good faith investigation, the size of the proposed class is so numerous that joiner of all individual members would be impracticable as the Proposed FLSA Class exceeds 1,000-2,000 individual members;

   b) The named plaintiffs are adequate class representatives because they are directly impacted by First Student's acts and omissions and the interests of the named plaintiffs are not antagonistic to the proposed class as a whole

   c) The attorneys representing the named plaintiffs each have in excess of 20 years of experience as trial attorneys and both attorneys have successfully represented similar plaintiffs against First Student for identical claims;

13

d)  Common questions of law and fact are involved, specifically related to First Student's accounting and pay practices; these common fact questions include, but are not limited to

    i.  Whether First Student unlawfully and willfully failed to pay straight and overtime compensation to members of the Proposed FLSA Class in violation of the FLSA;

    ii.  Whether the members of the Proposed FLSA Class are non-exempt employees entitled to overtime payment under the FLSA for all hours in excess of 40 hours in any given workweek;

    iii.  Whether First Student employed the members of the Proposed FLSA Class within the meaning of federal law;

    iv.  Whether First Student failed to keep accurate time records for all hours worked by members of the Proposed FLSA Class;

    v.  The proper measure of damages for member of the Proposed FLSA Class;

e)  First Student's acts and omissions have affected the proposed class in an equal manner and continued misconduct would similarly affect the proposed class members, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole appropriate.

**Class Representation – Counts II & III**

67.     Pursuant to N.J.S.A. 34:11-56a, New Jersey's State Wage and Hour Law (NJSWHL) plaintiffs bring the claims alleged in Counts II & III on behalf of themselves and

similarly situated employees who were, are, or will be hourly non-exempt bus drivers and driver assistants employed by First Student, who earned, but did not receive proper payment under applicable state law ("the Proposed NJSWHL Class").

68.   New Jersey's State Wage and Hour Law allows plaintiffs to maintain an action to recover unpaid wages including overtime wages for themselves and for other employees similarly situated.

69.   Plaintiffs contend that class representation is appropriate because:

   a)   Based upon preliminary good faith investigation, the size of the proposed class is so numerous that joiner of all individual members would be impracticable as the Proposed NJSWHL Class exceeds 1,000-2,000 individual members;

   b)   The named plaintiffs are adequate class representatives because they are directly impacted by First Student's acts and omissions and the interests of the named plaintiffs are not antagonistic to the proposed class as a whole

   c)   The attorneys representing the named plaintiffs each have in excess of 20 years of experience as trial attorneys and both attorneys have successfully represented similar plaintiffs against First Student for identical claims;

   d)   Common questions of law and fact are involved, specifically related to First Student's accounting and pay practices; these common fact questions include, but are not limited to

      i.   Whether First Student unlawfully and willfully failed to pay straight and overtime compensation to members of the Proposed NJSWHL Class in violation of the NJSWHL;

    ii.  Whether the members of the Proposed NJSWHL Class are non-exempt employees entitled to overtime payment under the NJSWHL for all hours in excess of 40 hours in any given workweek;

    iii.  Whether First Student employed the members of the Proposed NJSWHL Class within the meaning of federal law;

    iv.  Whether First Student failed to keep accurate time records for all hours worked by members of the Proposed NJSWHL Class;

    v.  The proper measure of damages for member of the Proposed NJSWHL Class;

e)  First Student's acts and omissions have affected the proposed class in an equal manner and continued misconduct would similarly affect the proposed class members, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole appropriate.

**Facts Applicable to All Counts**

70.    Prior to the time First Student agrees to a contract to provide student transportation for a particular school district or other entity, First Student secures an estimate as to the approximate time it would take to drive each route under the contract ("Estimated Route Times").

71.    These Estimated Route Times are imputed to a logistical computer program named FOCUS.

72.    These Estimated Route Times are compiled for each driver to form a "Standard Hours" estimate of the projected time the employee will work for a given week.

73.    At the start of each work day the FOCUS system generates an agenda of bus route

tasks that must be performed and assigns a driver to each route.

### (a) Preliminary and Postliminary Activities

74.     The drivers and assistants are instructed to appear at First Student's bus yard at a pre-designated time prior to their assigned run, e.g. 6:30 a.m. for morning runs and 1:30 p.m. for afternoon runs.

75.     At the time they arrive at the yard, the drivers and assistants stand in queue to receive their route assignment for the day and the keys to their assigned bus.

76.     Based on information and belief, the mean time that drivers aides will have to wait in between one (1) and three (3) minutes ("Queue Time" or "QT").

77.     After receiving their assignments and keys, the drivers, accompanied in most instances by their assistants (bus aides/monitors), proceed to their bus.

78.     According to defendant's own policies and procedures, drivers and aides are to be compensated between (1) and three (3) minutes to walk from the office to their bus, depending on the size of the bus lot ("Walk to Bus" time or "WTB").

79.     Once the driver and aide reach their assigned bus, the driver commences a "pre-trip" inspection of the bus assisted by the aide.

80.     According to defendant's own policies and procedures, including training materials, the pre-trip inspection takes about eight (8) minutes and both drivers and aides should be paid for this time ("Pretrip").

81.     The aforementioned preliminary activities, QT, WTB, and Pretrip, are an essential element of the driver's duties under Federal and state law and pursuant to the defendant's own policies.

82. After the Pretrip inspection is completed, the driver and aide (if applicable) perform their assigned bus run.

83. At a point prior to commencement of any runs, defendant's estimate the amount of time they believe the runs would take. ("Estimated Run Time").

84. If the actual time it takes to complete the bus run is more than the Estimated Run Time, the drivers and aides, routinely are only paid for the Estimated Run Time, not the actual run time.

85. When the drivers return to the lot after their bus run, they are required by law and pursuant to First Student requirements to conduct a post-trip inspection of their vehicle.

86. On a regular basis, in addition to the performance of a post trip inspection, the driver must clean their bus and, if necessary, they must wait in a queue to refuel their vehicle.

87. The re-inspection of the bus upon the return to the yard, the cleaning of the bus and the refueling of bus are all necessary aspects of the driver/aides' post trip process ("Post-Trip").

88. According to defendant's own policies and procedures, including training materials, the post-trip inspection takes about four (4) minutes and both drivers and aides should be paid for this time ("Post-trip").

89. After the driver has completed the Post-trip inspection, clean the bus, and refuel the bus if necessary, the driver and aide must walk back to the office to return the keys to the bus.

90. According to defendant's own policies and procedures, drivers and aides are to be compensated between (1) and three (3) minutes to walk from the office to their bus, depending on the size of the bus lot ("Walk from Bus" time or "WFB")

91. Defendant is not properly compensating their employees for the time expended by

their employees for these "postliminary activities".

92.    The aforementioned postliminary activities are an essential element of the employees duties under Federal and state law and pursuant to the defendant's own policies.

**(b) Shifting Time Keeping Burden**

93.    When defendant bids for work from a given school district, they collect information on the stops involved and create an optimized set of routes.

94.    All of the optimized routes have associated with them estimated completion times.

95.    According to defendant's own policies and procedures, the employees time for WTB, Pretrip, Post-trip, and WFB are to be added to the estimated completion time, to create total time the employee should be paid, collectively these estimates are call the Standard Hours.

96.    Defendant does not include the employees' QT, therefore this time is never compensated.

97.    Defendant routinely fail to include all the time required for the preliminary and postliminary activities (WTB, Pretrip, Post-trip and WFB), therefore this time is not properly compensated.

98.    Defendant's estimated completion times are routinely less than the actual run times, therefore this time is rarely properly compensated.

99.    When a run takes longer than estimated by defendant, an exception report is generated by defendant's logistics system.

100.    These exception reports are routinely ignored and the driver/aide is only paid the Estimated Route Time, which is less than the time actually worked.

101.    According to defendant's own policies and procedures, if a run takes longer than

predicted, the burden falls upon the driver to document the actual time worked.

102.   Where a driver does complain that they have not been paid for all time worked, these complaints are routinely ignored and the employees are not paid for all time worked, even though they have complained to management.

103.   By failing to maintain accurate time records of time actually worked by the employee, rather than an estimated projected amount of time worked by an employee and by shifting the burden of demonstrating the actual time worked to an employee, where the duty lies solely with the employer pursuant to Federal law, First Student has endemically and systematically violated both Federal and State law.

### (c)  Dead Time

104.   When a driver is assigned a "charter run" and there is gap time between the end of a regular run and the charter run, this time is designated "dead time".

105.   First Student would, on many occasions, shift the time incurred on a charter run to a latter pay period for the employee, thereby avoiding overtime payments.

106.   Drivers and their assistants are not compensated for this time.

107.   On a regular basis, when all of the drivers' hours are properly counted, the drivers work more than 40 hours per week and they were not paid all straight time owed.

108.    Pursuant to the FLSA, plaintiffs and the members of the Proposed FLSA Class are entitled to be paid for all straight time worked during weeks their hours exceed forty (40) hours.

109.   First Student has refused and continues to refuse to pay drivers and their assistants for all straight time worked.

110.   The failure of First Student to pay for all over time worked by the plaintiffs during

all weeks these drivers worked more than forty (40) hours is a violation of the FLSA.

## Count I
## (FLSA - Overtime Claim)

111.    The factual allegations set forth in the forgoing paragraphs are repeated and realleged as if set forth herein.

112.    During the course of employment, plaintiffs and members of the Potential FLSA Class, have, on regular occasions, worked more than forty hours per week.

113.    The drivers' point of origin and point of termination for all trips, regular and charter are in the State of New Jersey and any travel over interstate boundaries is *de minimis* when compared to the total number of miles driven by Plaintiffs in any given year.

114.    Any interstate travel by any Plaintiff is not integral to that plaintiff's job.

115.    Under the FLSA, First Student is required to compensate Plaintiffs and the members of the Potential FLSA Class one and one half (150%) of their regular rate of compensation for all hours worked over 40 hours, including partial hours.

116.    In an attempt to avoid this obligation, First Student divides the time expended into "Regular" and "Charter Rate" categories and underreports time actually worked by an employee.

117.    As long as the number of hours does not exceed 40 for any given category, even though the total number of hours worked in a given week exceeds forty (40) hours, the drivers and drivers' assistants would only be paid their regular rate of pay.

118.    In addition, First Student fails to compensate its employees altogether for Preliminary and Postliminary activities as well as for the Dead Time on charter runs.

119. To the extent the Preliminary and Postliminary activities as well as uncompensated Dead Time would have resulted in employees, including the Plaintiffs, working overtime hours, First Student has violated the FLSA by failing to pay overtime compensation.

120. Plaintiffs on a regular basis worked in excess of forty hours, when all time is properly counted, and were not paid time and a half for hours worked over forty hours in the given week.

121. In the work week ending on November 18, 2017, LaTanya Fofana-Smith worked in excess of 54.88 hours, but she was not paid one and a half her regular wage for all hours in excess of forty hours.

122. In the work week ending on November 11, 2017, LaTanya Fofana-Smith worked in excess of 52.52 hours, but she was not paid one and a half her regular wage for all hours in excess of forty hours

123. In the work week ending on November 4, 2017, LaTanya Fofana-Smith worked in excess of 63.34 hours, but she was not paid one and a half her regular wage for all hours in excess of forty hours.

124. In the work week ending on July 16, 2017, Victoria Gailer worked in excess of 42.27 hours, but she was not paid one and a half her regular wage for all hours in excess of forty hours.

125. In the work week ending on October 23, 2016, Tina Becker worked in excess of 43 hours, but she was not paid one and a half her regular wage for all hours in excess of forty hours.

126. In the work week ending on October 1, 2016, Tina Becker worked in excess of 41.54 hours, but she was not paid one and a half her regular wage for all hours in excess of forty

hours.

127.    Plaintiffs estimate that the amount of time above the time stated in paragraphs 107 through 125 *supra*, marshalled through examination of the plaintiffs' paystubs, would likely be several additional hours per week, but a more precise estimate cannot be provided without access to defendants' records.

128.    The examples of violations set forth in paragraphs 119 through 125 are not the only violations that have occurred but are only examples of violations.

129.    The failure to pay overtime rates for all hours worked in excess of 40 hours for any employee is a violation of the FLSA.

**WHEREFORE**, Plaintiffs pray for judgment awarding:

a)   The certification of this matter as an "opt-in" class action under Section 216(b) of the FLSA; and,

b)   Actual Damages, including back pay; and,

c)   Liquidated Damages; and,

d)   An extension of the limitations period applicable to this case to three years; and,

e)   Imposition of counsel fees and costs; and,

f)   Any and all other equitable remedies the court may deem appropriate.

**Count II**
**(New Jersey State Wage and Hours Law - Straight Time Claim)**

130.    The factual allegations set forth in the forgoing paragraphs are repeated and realleged as if set forth herein.

131.    Pursuant to New Jersey's State Wage and Hour Law (NJSWHL), N.J.S.A. 34 § 11-

56a and regulations there under,  plaintiffs and the members of the proposed NJSWHL class are entitled to be paid for all time they are required to be at their her place of work.

132.    First Student has refused and continues to refuse to pay drivers and assistants for all time worked which is not overtime, i.e. "straight time".

133.    The failure of First Student to pay for all straight time worked by is a violation of the NJSWHL.

WHEREFORE, Plaintiffs pray for judgment awarding:

a)  The certification of this claim as an "opt-in" collective class action; and,

b)  Actual Damages, including back pay; and,

c)  Imposition of counsel fees and costs; and,

d)  All accrued interest; and

e)  Any and all other equitable remedies the court may deem appropriate.

## COUNT III
### (New Jersey State Wage and Hour Law - Overtime Claim)

134.    The factual allegations set forth in the foregoing paragraphs are repeated and realleged as if set forth herein.

135.    Pursuant to the NJSWHL and regulations there under,  plaintiffs and the members of the proposed NJSWHL Class are entitled to be paid 150% of their regular wage for all time they are required to be at their her place of work in excess of forty hours in a given week, i.e. "overtime".

136.    First Student has refused and continues to refuse to pay drivers and assistants for at a rate of 150% of the employees' regular rate of pay for all overtime worked.

137.    As a direct and proximate result of First Student's failure to pay overtime as

required, the named plaintiffs and members of the proposed NJSWHL class have suffered and will continue to suffer lost wages and other damages.

        **WHEREFORE**, plaintiffs pray for judgment awarding:

     a)  The certification of this claim as an "opt-in" collective class action; and,

     b)  Actual Damages, including back pay; and,

     c)  Imposition of counsel fees and costs; and,

     d)  All accrued interest; and

     e)  Any and all other equitable remedies the court may deem appropriate.

                    FOR THE PLAINTIFF(S):

                    By: /s/ Patrick T. Cronin   and
                         /s/ Steve Berkowitz
                    Attorneys for Plaintiffs
                    CRONIN AND BERKOWITZ, LLC
                    10000 Lincoln Drive, Suite 202
                    Marlton, NJ  08054
                    Phone: (856) 350-6060
                    Email: ptc@croninandberkowitz.com
                           sab@croninandberkowitz.com